THE STATE OF TEXAS ET AL. v. THEODORE MALLINSON.

No. 3516.

Alien Land Law— Case Adhered to.—The Act of Twenty-second Legislature, chapter 62, General Laws (p. 82), approved April 13, 1891, "to amend title 3, articles 9 and 10," etc., held void, the court adhering to opinion in Gunter v. Texas Land and Mortgage Company, Limited, ante, page 496.

APPEAL from McLennan. Tried below before Hon. L. W. GOODRICH. The opinion states the case.

*M. C. H. Park*, for appellant Slayden.—1. A deed or other instrument purporting to convey any interest in lands in Texas to an alien is void. Acts 22d Leg., chap. 62.

2. A deed to an alien being void, no title passes from the grantor in such deed, and none is invested in the grantee. Acts 22d Leg., chap. 62; Clay v. Clay, 26 Texas, 24.

3. A deed to a subsequent purchaser from one who has made a void deed to land passes title to said subsequent purchaser. Cummings v. Powell, 8 Texas, 80.

*J. W. Taylor*, County Attorney, for The State.—1. While the provision of the Constitution is mandatory that every law passed by the Legislature shall embrace but one object, which shall be expressed in its title, yet this provision is to be liberally construed. Giddings v. San Antonio, 47 Texas, 548.

2. Slight omissions or mistakes in the caption of a law, where no one could have been surprised or misled thereby, will not vitiate the law. The State v. McCracken, 42 Texas, 383.

The objection to the sufficiency of the caption or title of the law in question is in brief that it does not show clearly what law was intended to be amended. The caption states that it is an act to amend title 3, articles 9 and 10. It is true that it does not refer in express terms to title 3 of the Revised Statutes of the State of Texas, but by reference to title 3, articles 9 and 10 of said Revised Statutes, it will be seen that the act in question is clearly intended to amend that title and no other, and that the act could refer to no other portion of the laws of Texas.

The purpose of the constitutional provision invoked in this case is to prevent surprise and give notice of the purpose of intended laws. Bearing in mind this purpose, it is plain that no one could be surprised or misled by the omission from the title of this act. The laws of Texas contain no other "title 3," and articles 9 and 10 appear nowhere else in the laws of Texas.

*C. A. Culberson*, Attorney-General, for The State.—It is believed the facts of this case indicate a preconceived purpose on the part of certain private parties to test the validity of what is known as the alien land law, enacted by the Twenty-second Legislature, and inquiry into the circumstances under which the suit was instituted rather confirms the impression drawn from the record. The case, however, is regularly pending in this court, and I do not feel authorized to dismiss the appeal, though I am of the opinion that the only purpose of the transaction which gave rise to it was to obtain a decision of this court upon the question.

On the 3d day of September, 1891, Theodore Mallinson, a citizen and subject of Great Britain, purchased from T. F. Jones, according to a

deed placed on record, about twenty-five acres of land in McLennan County for $500. The State of Texas, through the county attorney, on September 15, 1891, instituted this suit in the District Court of that county against Mallinson, who was served with citation September 16, 1891, to escheat said land under the provisions of the law referred to. T. F. Jones transferred the same land to S. W. Slayden by deed dated October 7, 1891, and on the 9th day of October Slayden intervened in the cause, claiming title to the land. Some of these facts were omitted from the transcript, but are shown by an agreement on file. The cause was tried October 9, the State establishing its case fully by Mallinson himself, and judgment was rendered in his favor and against the State and Slayden.

The court held the Act of the Legislature void under article 3, section 35, of the Constitution, "in that the title of the act does not express that it is an amendment of any part of the Revised Statutes, by which term existing laws are known and cited; neither is there any word in the title indicating that the act has any reference to the right of aliens to take and hold lands in this State, nor does the title make any reference to the right of corporations."

It may be said, therefore, that the act was declared invalid because, in the opinion of the court, (1) the subject of the proposed legislation was not expressed in the title either by reference to the Revised Statutes or the right of aliens eo nomine to hold lands in this State; (2) the act contains more than one subject of legislation, to-wit, the right of aliens to hold lands, and the like right of corporations in which aliens are interested.

These objections to the law will be considered in the order above presented, to which will be added other propositions upon which it is submitted the judgment should be reversed and here rendered for the State escheating the land.

1. By article 3, section 35, of the Constitution, under which the act was declared inoperative, it is provided, that "No bill (except appropriation bills, which may embrace the various subjects and accounts for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." In determining whether the title of the act under consideration is in violation of this provision of the Constitution, certain general and well defined principles should be observed. "It is not allowable, for the purpose of invalidating a law, to sit in judgment upon its title to determine whether it might not have been more explicit, and so drawn as more clearly and definitely to indicate the nature of the legislation covered by it. The Legislature is not subject to judicial control in respect to the form or mode in which the 'subject' of a bill

shall be expressed. If it is expressed the Constitution is satisfied." People v. Bank, 67 N. Y., 572.

So, also, and particularly in this character of case, the conflict between the Constitution and statute must be clear and unmistakable before the courts are authorized to declare the latter inoperative and void. "As the State Constitution has not indicated the degree of particularity necessary to express in its title the one object of an act, the courts should not embarrass legislation by technical interpretations based upon mere form or phraseology. The objections should be grave, and the conflict between the statute and the Constitution palpable, before the judiciary should disregard a legislative enactment upon the sole ground that it embraced more than one object, or if but one object, that it was not sufficiently expressed by the title." Montclair v. Ramsdell, 107 U. S., 155.

It is also now universally recognized, that while this and similar constitutional requirements are mandatory, they will be liberally construed to sustain legislation; and in cases not clearly within the mischief intended to be remedied by such provisions, statutes will not be adjudged inoperative. Cool. Const. Lim., 4 ed., sec. 178, and note 7; Suth. Stat. Con., secs. 82–92; Breen v. Railway, 44 Texas, 305, 306; Giddings v. San Antonio, 47 Texas, 556; Albrecht v. The State, 8 Texas Ct. App., 221; Davis v. The State, 61 Am. Dec., 339, and authorities cited.

The mischief intended to be prevented by the provision under consideration is equally well recognized, and is thus stated by the leading law writer on this subject, and quoted with approval by this court: "It may therefore be assumed as settled that the purpose of these provisions was, first, to prevent hodge-podge or log-rolling legislation; second, to prevent surprise or fraud upon the Legislature by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire." Cool. Const. Lim., sec. 175; Tadlock v. Eccles, 20 Texas, 782; The State v. McCracken, 42 Texas, 385; Breen v. Railway, 44 Texas, 305, 306; Giddings v. San Antonio, 47 Texas, 553; Albrecht v. The State, 8 Texas Ct. App., 220; Suth. Stat. Con., sec. 78; Rader v. Township of Union, 39 N. J. Law, 509.

Measured by these rules of construction, the act is not subject to the first objection urged against it and sustained by the court. Its object sufficiently appears from its title, being "An act to amend title 3, articles 9 and 10, and to add articles 10a, 10b, 10c, 10d, 10e, 10f, 10g, 10h, and to repeal all laws in conflict herewith." While it does not specifically declare a purpose to amend the Revised Statutes, yet that is the

clear intention. Title 3 of the Revised Statutes contains only two articles, 9 and 10, and such is not the case with any other of our laws. There is no other "title 3" in our laws with articles 9 and 10 composing a part thereof. As articles 9 and 10 of title 3 of the Revised Statutes defined the rights of aliens to acquire and hold property in this State, and was then the only law on that subject, and as the act in question changes and amends the law with reference to the property rights of such persons, the court can say beyond a reasonable doubt that the title of the act had reference to the Revised Statutes. In that case it would be sufficient, contrary to the intimation of the learned district judge, and such has been the usual practice in this State. The State v. McCracken, 42 Texas, 386; Wilson v. Spaulding, 19 Fed. Rep., 304.

Though there be an insufficient expression of the subject in the title, or a positive error, yet in this case "no one could be misled by it to his prejudice," and the Constitution is satisfied. The State v. McCracken, 42 Texas, 386; In re Mayer, 50 N. Y., 507; Gillett v. McCarthy, 34 Minn., 318; Gilbert v. Belcher, 1 Bush, 145.

The precise point has been directly decided by the Supreme Court of Missouri in favor of the validity of the law. In that case the title of the act was, "An act to revise and amend chapters 176 and 186, inclusive, regulating the jurisdiction and procedure before justices of the peace in civil cases," and it was held sufficient to amend those chapters in the "General Statutes of 1865." The court felt authorized, from facts aliunde the title, to inquire what were the chapters referred to, and on this point said: "The title, on its face, says it is to revise and amend certain 'chapters' therein mentioned, regulating the jurisdiction and procedure before justices of the peace in civil cases. In point of fact, what are those 'chapters,' what do they regulate, and are the subjects thus regulated outside the title of this bill within the meaning of the Constitution, as interpreted by the adjudged case? This is a matter of inspection and construction." The State v. Ransom, 73 Mo., 87.

So, in this case, the court is empowered to inquire what are articles 9 and 10 referred to in the title, and as they are to be found only in title 3 of the Revised Statutes, they must be adjudged to have reference thereto, and as the subjects regulated are the same in each, the legislation is valid. The body of the bill may be read to discover the full meaning of its title, and all doubt is thus removed. In a similar case it was said: "While, from the body of this act, read in connection with section 25, it is very clear that it was not the intent of Congress to amend that section, yet it may be said to be doubtful from the body of the act itself what section it was intended to amend; but reading the body of the act and the title together, there can be no question what section the act is applicable to." Wilson v. Spaulding, 19 Fed. Rep., 306.

The journals of the Legislature may also be examined to determine the intention of that body, or show by what title the bill was known in its progress to final enactment. Suth. Stat. Con., sec. 44; Endlich Inter. Stats., sec. 33; Binz v. Weber, 81 Ill., 290; Supervisors v. Heenan, 2 Minn., 306, 307. By this means, if any doubt remains, it is easily made plain that the intention was to amend the Revised Statutes.

The act shows it to be a substitute for House bills 42 and 137. The former was entitled, "An act to amend title 3, article 9, of the Revised Civil Statutes, and add thereto article 10a, to prohibit the alien ownership of land in Texas." The latter bill was entitled, "An act to restrict the right of aliens to acquire and hold real and personal property in this State, and to provide for the disposition of lands now owned by nonresident aliens." House Jour., pp. 52, 53, 80.

It also appears that bill 42 was referred to the Committee on State Affairs, and on January 30 that committee reported it back to the House, quoting the title in full as above set out, and recommended that it be referred to the Judiciary Committee. Jour., p. 217. On March 13 the Judiciary Committee reported that "House bills Nos. 42 and 137, being 'An act amending title 3, article 9, of the Revised Statutes,'" had been under consideration, and recommended a substitute, the title of which is as appears in the law finally adopted, the words "Revised Civil Statutes" being omitted. Jour., pp. 601, 602. Before the final passage of the substitute, however, the record discloses that though the title remained unchanged it was known and designated as the bill "relating to alien ownership of land." Jour., p. 786.

From this history of the introduction and passage of this measure, it seems clear that it is not a case falling within the mischief intended to be remedied by the constitutional provision invoked. It can not reasonably be claimed that it contains hodge-podge or log-rolling legislation, for it undoubtedly deals with only one subject. Throughout its consideration the members of the Legislature were constantly and plainly advised that its purpose was to define and regulate the rights of aliens to acquire and hold lands in this State, and there can be no pretense that they were either misled or deceived. At every point, and wherever mentioned, its character was disclosed. The public, also, had the means of information provided by law, for it is within the judicial knowledge of this court that the Journal from which the foregoing citations are taken was issued daily in installments. House Jour., p. 85.

Under these circumstances this court, years ago, declared what is now the universal rule: "It does not come within the mischief which it was the object of this provision of the Constitution to prevent, and it is not, we think, in violation of its letter and spirit. Murphey v. Menard, 11 Texas, 673. "It is only in cases clearly involving the mischief provided against that this court should be called upon to declare

void the acts of the Legislature." People v. McCallum, 1 Neb., 195; Suth. Stat. Con., secs. 82, 92; St. Louis v. Tiefel, 42 Mo., 592; 17 Am. Law Rev., p. 495, and authorities.

2. There can be no division of opinion upon the proposition that the trial court erred in declaring the act void because it provided for the escheat of lands thereafter purchased by corporations composed in whole or in part of aliens. As has been shown, the act amended title 3 of the Revised Statutes, which defined the property rights of aliens, but which failed to define the rights of corporations composed of aliens. Such being the case, if it be conceded that the rights of aliens and the rights of corporations composed of such are different subjects, with no legal connection or relation, the act could only be held void in so far as it affected corporations, for the Constitution expressly provides, that "if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." Const., art. 3, sec. 35; Shields v. Bennett, 8 W. Va., 84, 85. The rights of corporations composed of aliens, moreover, were not involved in the cause, and the ruling was uncalled for; and in the absence of the express provision of the Constitution the judgment is erroneous. Cool. Const. Lim., sec. 181.

But only one subject is embraced in the act. Its broad and comprehensive purpose is to prohibit the alien ownership of land in Texas, and whatever provisions are necessary or proper to effect the end designed may lawfully be resorted to. If the act contained a prohibition against ownership by natural persons only, it would be imperfect and ineffectual. It would invite nullification and evasion through corporate manipulation. It was therefore necessary to its fullness and completion that all avenues should be guarded, and that by its silence the law should not seemingly permit corporations, controlled and dominated by unnaturalized foreigners, to accomplish by indirection the overthrow of its policy. The bringing of corporations tainted with alienage under the inhibition of the statute was but a means of executing the chief end in view. The two characters of ownership have a necessary and proper connection. They relate to the same subject, are based upon the one fact of alienage, and are parts of and incident to the same general purpose sought to be accomplished. That which has reference to corporations is auxiliary to the paramount object to be effected. "To require every end and means necessary or convenient for the accomplishment of this general object to be provided for by a separate act relating to that alone, would not only be unreasonable but would actually render legislation impossible. * * * The generality of a title is therefore no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection." Cool. Const. Lim., secs. 175, 176. "The subject must be single; the pro-

visions to accomplish the object involved in that subject may be multifarious. \* \* \* None of the provisions of a statute will be held unconstitutional when they relate, directly or indirectly, to the same subject, have a natural connection, and are not foreign to the subject expressed in the title." Suth. Stat. Con., sec. 85. "Where the title of a legislative act expressed a general subject or purpose which is single, all matters which are naturally and reasonably connected with it, and all measures which will or may facilitate the accomplishment of the purpose so stated, are properly included in the act and are germane to its title." Suth. Stat. Con., sec. 93, and authorities cited; Breen v. Railway, 44 Texas, 306; Davey v. Galveston Co., 45 Texas, 298; Mills v. Charleton, 29 Wis., 407; Stone v. Brown, 54 Texas, 342; Day Co. v. The State, 68 Texas, 542; 17 Am. Law Rev., p. 495, and authorities.

3. Every nation or government has the power of granting or refusing to foreigners the right of possessing lands or other immovable property within its territory. Vattel Law of Nations, sec. 114. Under the government of the United States this right rests primarily in the several States, but it is subject to the treaty making authority of the Federal Constitution. In the absence of a treaty clothing subjects of foreign countries with the power to acquire and hold lands, each State may deny or grant the authority. But under the decisions of the Supreme Court of the United States the laws of the several States can not interfere with property rights conferred by treaty. Hauenstein v. Lynham, 100 U. S., 488.

In the present case, however, no such conflict of authority appears, for there is no treaty between the United States and Great Britain whereby the subjects of the latter are invested with the power to hold real estate in the former. Treaties and Conventions (1889), secs. 370–501; Morse on Citizenship, sec. 206.

The appellee purchased the property described in the record in open and rather contemptuous disregard of the statute. It is even apparent that he has gone further, and has invited the State to a test of the supremacy of its laws. The penalty, and the right of the State to impose it, being clear, it is submitted that the judgment should be reversed and here rendered that the appellant Slayden take nothing by his intervention, for he purchased after the statute had vested the property in the State and pending the litigation, and that the same be escheated under the provisions of the act.

*Williams & Evans*, for appellee.—1. A constitutional provision can not be liberally construed where the effect of such construction would be to avoid the constitutional requirements provided by the organic law. Const. 1876, art. 5, sec. 12; Id., art. 3, sec. 15; The State v. Durst, 7 Texas, 74; The State v. Sims, 43 Texas, 521; Thompson v. The State, 15 Texas Ct. App., 39; Suth. Stat. Con., sec. 101.

2.   The provisions of the law (Acts 1891, p. 82) are contradictory. Section 9 provides that an alien may take title to personal property, thereby permitting aliens to hold stock in corporations, continue to hold, or may own real property; such stock is personal property. Section 10 prohibits any corporation composed in whole or in part of aliens from taking title to lands, declaring a deed to such corporation void. These clauses are contradictory, and as to their provisions must be held irreconcilable and of no effect.  Suth. Stat. Con., p. 220.  Being void as to these provisions, and these not being separable from the remainder of the act, renders the whole act void.  Suth. Stat. Con., sec. 172.

3.   Section 10 of said law provides that any deed to an alien is void, yet section 10d provides that the proper officers of the State shall escheat the land to the State.  These provisions are contradictory, in that if the deed to an alien is void no title vests in him, and the State has no right to escheat, or more properly forfeit, the title.  The two provisions can not stand, and being contradictory are void, and not being separable from the remainder, render the whole act void.  Authorities supra; Clay v. Clay, 24 Texas, 26.

4.   Section 10 of the act applies as well to transactions had before the passage of the act as to those after the passage of the act, and attempts to render any deed to an alien void, whether executed before or after it went into effect.   If this construction is borne out by the terms of the act it would impair the obligation of contracts and be void.  Suth. Stat. Con., 236.

STAYTON, CHIEF JUSTICE.—This is an agreed case, involving the same question considered in case of Gunter v. Texas Land and Mortgage Company, Limited, this day decided, which arises on the following facts:

"It is agreed that Theo. Mallinson, appellee, purchased the land in controversy herein from one Travis Jones, by deed dated September 3, 1891, and that at said date, and now, the said Mallinson is an adult alien, a subject of the Kingdom of Great Britain and Ireland, and that he has never declared his intention of becoming a citizen of the United States of America, or of the State of Texas.

"It is further agreed that said land was afterward conveyed by said Travis Jones to intervenor S. W. Slayden.

"The State of Texas, the plaintiff below, appellant here, contends, that by Act of the Legislature, approved April 13, 1891, to amend title 3, articles 9 and 10 (Laws 22d Leg., p. 82), said land should be escheated to the State of Texas.

"Intervenor contends that said deed from Jones to Mallinson is void by the terms of said law, that the same did not divest the title out of Jones, and that the deed from Jones to intervenor conveyed the title."

The action was brought by the State to have title to the land declared to be vested in it, and Slayden intervened, asserting title in himself; but the court below held the act on which the proceeding is based to be void and rendered judgment in favor of Mallinson, and from that judgment this appeal is prosecuted.

We deem it unnecessary to discuss the many questions presented by the agreed case, for the objection to the law under which the State and intervenor claim, considered in the case before referred to, is fatal to the claims of both, and the judgment of the court below will be affirmed.

*Affirmed.*

Delivered December 11, 1891.